**IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GFS INDUSTRIES, LLLC,** | ) | **Case No. 22-50403** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| **AVION FUNDING, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary No. 22-_____** |
| | ) | |
| **GFS INDUSTRIES, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**ORIGINAL COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523(a)(2) & (4)**

**TO THE HONORABLE CRAIG A. GARGOTTA, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Comes now **AVION FUNDING, LLC**, Plaintiff herein ("Avion" and/or the "Plaintiff"), through its attorneys of record Shiryak, Bowman, Anderson, Gill, & Kadochnikov, LLP., and files its Original Complaint for Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)&(4) and Denial of Discharge pursuant to 11 U.S.C. §727(a)(3)&(4) & §1141(d)(3) against **GFS INDUSTRIES, LLC** ("Debtor" or "Defendant"). In support of its Complaint, Avion would respectfully show as follows:

## I. **Nature of the Case**

1. Avion seeks -

a). a determination that its claims against the Debtor as reflected by Proof of Claim Nos. (1-1) in the amount of $299,800 in the Claims Register for this Chapter 11 Case which remains un-objected and is therefore deemed allowed is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) & (4) (the "Claim");

and

b). in the event of the Confirmation of a Plan of Reorganization by the Debtor, that Plaintiff's Claim remains non-dischargeable under a Confirmed Plan pursuant to § 1141(d)(3).

## II. **JURISDICTION AND VENUE**

2. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.The Court may hear and determine this adversary proceeding because this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I), and (J).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    <u>PARTIES</u>

3.    Plaintiff **Avion Funding, LLC** is a New Jersey Limited Liability Company engaged in the business of the purchases of future account receivables. Plaintiff's principal place of business is located at 101 Chase Avenue Ste. 208 Lakewood, NJ 08701, which can be served through its attorneys of record Btzalel Hirschhorn, Esq. at 80-02 Kew Gardens Rd. Ste. 600, Kew Gardens, NY 11415.

4.    Debtor and Defendant **GFS INDUSTRIES, LLC** is a company headquartered in the State of Texas who can be served with process through its attorney of record, The Lane Law Firm, PLLC, 6200 Savoy Dr. Ste. 1150, Houston, TX 77036, or at its principal place of business at 24615 W Interstate 10, San Antonio, TX 78257.

### IV. <u>FACTS</u>

### SALE OF FUTURE RECEIVABLES

5.    On April 6, 2022, the Debtor entered into a Sale of Future Receipts Agreement ("Agreement") with Avion. Pursuant to the Agreement, the Debtor sold to Avion $299,800 (the "Purchased Amount") of its Future Receivables. A true and correct copy of the Agreement is attached as **Exhibit "A"** to this Complaint and incorporated herein for all purposes.

6.    Pursuant to the Agreement, on or about April 6, 2022, Avion provided the Debtor with $190,000.

7.    To secure the Debtor's performance under the Agreement, the Debtor granted Avion a security interest in all of its assets. A UCC Financing Statement was filed on April 7, 2022. A true and correct copy of the UCC-1 Financing Statement is attached as Exhibit B.

8.      Avion obtained a security interest in the Future Receipts it purchased which arose

by operation of law and was perfected on attachment. See UCC §§ 9-109(a)(3), and 9-309.

9.      In the Agreement, signed by the Debtor's principal George Hellman, the Debtor

made numerous representations to Plaintiff as follows:

> The Receivables Purchased Amount shall be paid to AF by each Merchant irrevocably authorizing only one depositing account acceptable to AF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as AF receives payment in full of the Receivables Purchased Amount. *Each Merchant hereby authorizes AF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide AF with all required access codes and monthly bank statements.* (emphasis added). See Agreement ¶1.
>
> Financial Condition and Financial Information. Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to AF, and future statements which will be furnished hereafter at the request of AF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise AF of any material adverse change in its financial condition, operation, or ownership. See Agreement ¶21.
>
> No Bankruptcy. Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement. See Agreement ¶28.
>
> Unencumbered Receivables. Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of AF, other than any for which AF has actual or

constructive knowledge as of the date of this Agreement. See Agreement ¶29.

Stacking. Each Merchant represents, warrants, and covenants that it will not enter into with any party other than AF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of AF. See Agreement ¶30.

Business Purpose. Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes. See Agreement ¶31.

10.    Despite the fact that the Debtor was continuing to operate and generate receivables, immediately after receiving the funding, the Debtor put a stop payment on its account thus blocking Plaintiff from being able to debit any of its Receivables.

11.    On April 12, 2022, six days after receiving the funds from Avion, despite representing to Plaintiff that it did 'not contemplate' filing for bankruptcy, the Debtor retained The Lane Law Firm, PLLC ("Debtor's Counsel"), to represent it with respect to the instant bankruptcy proceeding. See Engagement Letter of Debtor's Counsel [See Dkt. No. 24-3 of main bankruptcy]. A true and correct copy of the Engagement Letter filed by Debtor's counsel on the main bankruptcy docket is attached hereto as Exhibit C.

12.    Despite being under an affirmative obligation pursuant to the terms of the Agreement to notify Plaintiff in the event of any material adverse change in its financial condition, the Debtor failed to notify Plaintiff that it had retained bankruptcy counsel. The Debtor further failed to notify Plaintiff that it was having financial difficulties.

13.    On April 21, 2022, just fifteen days after receiving funding from Plaintiff and having made zero payments to Plaintiff, and despite specifically representing to Plaintiff that it

did not intend to file for bankruptcy, the Debtor filed the instant voluntary bankruptcy petition under Chapter 11 with this Court.

14.     Upon the Debtor's bankruptcy filing, Plaintiff learned for the first time, that contrary to the representations made by the Debtor in ¶30 of the Agreement, not only were there liens already in place on the Debtor's receivables, but on the very same day that the Debtor was accepting funding from Plaintiff, the Debtor had gone to another merchant cash advance company, Fusion Funding ("Fusion"), for further capital and had further pledged its future receivables to Fusion. See Doc. No. 16-1, Exhibit 1, to main bankruptcy proceeding. A true and correct copy of the Fusion Funding Agreement that was filed on the main bankruptcy docket is attached hereto as Exhibit D.

15.     It was at this time that Plaintiff also learned for the first time that contrary to the representations the Debtor made in ¶29, the Debtor's receivables were not in fact unencumbered, and there were senior liens on its assets in favor of, among other creditors, TVT 2.0 LLC ("TVT"). See Objection to Motion for Authority to Use Cash Collateral, Doc. No. 18 of main bankruptcy proceeding. A true and correct copy of the Objection and supporting exhibits filed on the main bankruptcy docket are attached hereto as Exhibit E.

**<ins>Actions Taken Post-Petition in Chapter 11 Case</ins>**

16.     On May 26, 2022, George Hellman, the Debtor's principal testified under oath at the §341 Meeting. Mr. Hellman testified that the Debtor had made pre-petition payments to Avion. Mr. Hellman also testified that the Debtor was signing new contracts daily.

17.     Mr. Hellman was advised by counsel for Avion that Avion had no record of receiving any pre-petition payments from the Debtor. Despite being made aware of this Mr. Hellman did not change or otherwise retract his testimony. A discussion ensued between counsel

for the Debtor and counsel for Avion regarding the disclosure of the Debtor's pre-petition bank statements to verify the Debtor's testimony that payments had been made to Avion.

18.     Since the Petition Date, the Debtor's actions have only created doubt, uncertainty, and lack of trust, as to its transparency and motives in this Chapter 11 Case. To date, despite multiple requests for the Debtor's pre-petition bank statements, and despite Debtor's counsel's representations to the Court at the June 29, 2022, status conference that the pre-petition bank statements would be provided, the Debtor has still failed to disclose the pre-petition bank statements.

19.     Mr. Hellman also testified at the §341 Meeting that the bulk of the issue that had led to the Debtor's financial difficulties and the instant bankruptcy proceeding was that the Debtor's payroll was too high. Mr. Hellman testified that this issue had begun 'nine – twelve months' prior to the bankruptcy filing.

20.     The Debtor's monthly operating reports for May and June 2022, show that the Debtor has been using and paying at least one credit card throughout the instant bankruptcy proceeding. A true and correct copy of the pertinent portions of the May and June 2022 Monthly Operating Reports filed by the Debtor is attached hereto as Exhibit F. This is in violation of this Court's cash collateral order dated May 11, 2022, which permitted the Debtor to use its cash only in accordance with the Debtor's budget annexed to the cash collateral order. The budget did not provide an expenditure for credit cards. A true and correct copy of the Court's cash collateral order along with the budget is annexed hereto as Exhibit G.

21.     At the June 29, 2022, the Debtor's counsel represented that the Debtor's credit card statements would be provided. To date, despite these representations and despite follow up requests from Plaintiff's counsel, the Debtor has failed to provide its credit card statements.

22.     At the June 29, 2022, status conference, the Debtor's counsel also represented that the Debtor intended to pay either 100% of the claims or close to it.

23.     On July 20, 2022, the Debtor filed its misleadingly labeled 'DEBTOR'S CONSENSUAL PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE' ("Plan"). A true and correct copy of the Plan filed by the Debtor is attached hereto as Exhibit H. This Plan is not consensual, and Plaintiff's consent was never sought or provided prior to the filing of the Plan. The Plan proposes to pay Plaintiff thirty five percent (35%) of its claim and seeks a discharge of the remainder of Plaintiff's Claim.

### Plaintiff's First Cause of Action Determination of Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A)

24.     Avion incorporates by reference the foregoing paragraphs as if set forth herein *verbatim.*

25.     As set forth above, the Debtor is indebted to Avion in the amount of $299,800 reflected by Proof of Claim No. (1-1).

26.     Avion objects to the dischargeability of its Claim because it was obtained through the false representations and actual fraud of Defendant.

27.     Section 523(a)(2)(A) of the Bankruptcy Code provides in relevant part:

(a)     A discharge under section 727…1141 of this title does not discharge an individual debtor from any debt –

(2)     for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

See 11 U.S.C. § 523(a)(2)(A).

28.     As set forth above, the Debtor has made multiple misrepresentations. Specifically, the Debtor represented that:

      a.     It would make daily remittances to the Plaintiff;

      b.     It did not intend to file for Bankruptcy;

      c.     Its cash receivables were unencumbered;

      d.     It would not enter into other merchant cash advance agreements;

29.     Each of these representations was material.

30.     Each of these representations was false.

31.     The Debtor also falsely represented to Plaintiff that it would authorize it to ACH debit its receivables. By immediately blocking Plaintiff from making ACH debits and then filing for bankruptcy sixteen days after receiving $190,000 in funding from Plaintiff and failing to remit a single payment from its receivables, the Debtor has demonstrated that it did not intend to ever pay over the accounts receivable owed to Plaintiff.

32.     Further, the Debtor knew when it entered into the Agreement with Avion that it was having financial difficulty. Mr. Hellman testified at the §341 Meeting that the Debtor was already having financial difficulty 'nine – twelve months' prior to the bankruptcy proceeding. Despite this, a mere six days after specifically representing to Plaintiff that the Debtor did not intend to file for bankruptcy, the Debtor retained bankruptcy counsel.

33.     Upon information and belief, the Debtor knew at the time it entered into the Agreement that it did in fact intend to file for bankruptcy. This is evidenced by the fact that the Debtor retained bankruptcy counsel a mere six days after entering into the Agreement.

34.     Alternatively, the Debtor acted with reckless disregard for the truth as it should have known that it would file for bankruptcy as it had already begun to experience financial difficulty.

35.     The Debtor also falsely represented to Plaintiff that its accounts receivables were unencumbered. In fact, as evidenced by the Debtor's Petition and subsequent filing in this case, there were other creditors of the Debtor with senior liens on the Debtor's accounts receivables. The Debtor knew that there were senior liens yet represented to Plaintiff that there were no senior liens.

36.     Alternatively, the Debtor made these representations with reckless disregard for the truth as it should have known or been aware of its own financial condition.

37.     The Debtor also falsely represented to the Plaintiff that it would not stack its receivables by entering into other merchant cash advance agreements. In fact, on the very same day the Debtor entered into the Agreement with Plaintiff, the Debtor entered into a similar agreement with Fusion.

38.     When the Debtor made these representations, the Debtor knew that they were false, or made them recklessly, as a positive assertion, and without knowledge of their truth.

39.     The Debtor made each representation with the intent that Avion would act on it.

40.     Avion relied on the representations of the Debtor.

41.     The Debtor's representations caused Avion to be injured in the amount of $299,800 representing the unpaid balance due from the Debtor.

42.     The debt of $299,800 owed by the Debtor to Avion is therefore non-dischargeable under § 523(a)(2)(A).

## Plaintiff's Second Cause of Action Determination of Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(B)

43.     Avion incorporates by reference the foregoing paragraphs as if set forth herein *verbatim.*

44.     As set forth above, the Debtor is indebted to Avion in the amount of $299,800 reflected by Proof of Claim No. (1-1).

45.     Avion objects to the dischargeability of its Claim because it was obtained through the use of a written statement that was materially false.

46.     Section 523(a)(2)(B) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727…1141 of this title does not discharge an individual debtor from any debt –

(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

47.     As discussed above, the Debtor made numerous written false statements in the Agreement.  Each of these statements were materially false, each of these statements respected the Debtor's financial condition, Plaintiff reasonably relied on each of these statements in providing funding to the Debtor, and each of these statements were made by the Debtor with the intent to deceive Plaintiff into providing funding.

48.     The Debtor's representations caused Avion to be injured in the amount of $299,800 representing the unpaid balance due from the Debtor.

49.     The debt of $299,800 owed by the Debtor to Avion is therefore non-dischargeable under §523(a)(2)(B).

**Third Cause of Action Complaint for Denial of Discharge Under 11 U.S.C. §727(a)(3)**

50.     Avion incorporates by reference the foregoing paragraphs as if set forth herein *verbatim.* As set forth above, the Debtor is indebted to Avion in the amounts of $299,800 representing the unpaid balance due from the Debtor.

51.    Pursuant to §727(a)(3), Avion objects to the Debtor's Discharge under §727(a)(3)

of the Bankruptcy Code which provides in relevant part:

The court shall grant the debtor a discharge, unless –

> (a)    the debtor, with the intent to hinder, delay, or defraud a creditor or
> an officer of the estate charged with custody of property under this title,
> has . . . failed to keep or preserve any recorded information, including
> books, documents, records, and papers, from which the debtor's financial
> condition or business transactions might be ascertained, unless such act or
> failure to act was justified under all of the circumstances of the case;

52.    Repeated requests have been made to the Debtor for the pre-petition bank

statements to ascertain (i) whether the Debtor made any payments to Plaintiff; and (ii) How the

Debtor spent the funds.  To date the Debtor has failed to provide these records.   Further, in an

email from Debtor's counsel dated June 9, 2022, Debtor's counsel conceded:

> I think there are several MCA's that took place at a similar time.  I believe (without
> looking at my notes) that there was another one even after your client's funding.  We'll
> work to get relevant statements produced, but the funds were all put into one
> account.  Segregating the spending of your client's funds versus those of another MCA or
> their regular business operations will likely be impossible.

53.    A True and correct copy of the email from Debtor's counsel is attached hereto as

Exhibit I.

54.    The Debtor has thus conceded that it has failed to maintain proper records. Per ¶31

of the Agreement, the Debtor was only permitted to use the funds for a specified business

purpose. The Debtor has conceded that it has failed to keep or preserve records to demonstrate

that it used Plaintiff's funds in accordance with ¶31 of the Agreement.

55.    Accordingly, the Debtor's Discharge under § 727(a)(3) should be denied.

**Fourth Cause of Action Complaint for Denial of Discharge Under 11 U.S.C. §727(a)(4)**

56.     Avion incorporates by reference the foregoing paragraphs as if set forth herein verbatim. As set forth above, the Debtor is indebted to Avion in the amounts of $299,800 representing the unpaid balance due from the Debtor.

57.     11 U.S.C. §727(a)(4) provides in pertinent part:

(4) the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account;

58.     The Debtor's principal testified at the §341 Meeting that it had made pre-petition payments to Plaintiff. In fact, the Debtor did not make any pre-petition payments to Plaintiff. The Debtor's principal knew this statement was false when he made it.

59.     Accordingly, the Debtor's discharge should be denied under §727(a)(4).

**Fifth Cause of Action Complaint for Denial of Discharge Under 11 U.S.C. §727(a)(5)**

60.     Avion incorporates by reference the foregoing paragraphs as if set forth herein verbatim. As set forth above, the Debtor is indebted to Avion in the amounts of $299,800 representing the unpaid balance due from the Debtor.

61.     11 U.S.C. §727(a)(5) provides in pertinent part that the Debtor will be denied a discharge in the event that "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

62.     Here, the Debtor has failed to explain satisfactorily the loss of $190,000 provided by Avion in the sixteen-day period from the time it accepted the funds until the time it filed for bankruptcy. The Debtor has set forth a proposed plan of reorganization proposing to pay Avion a total of only thirty five percent (35%) of its claim to be paid over a five-year period. The Debtor

has failed to explain what happened to the funds provided by Plaintiff that it can no longer afford to repay the owed receivables as agreed upon.

63.     Accordingly, before a determination or denial of discharge, Plaintiff will show that the Debtor cannot satisfactorily explain the loss of $190,000.

## Sixth Cause of Action Complaint for Denial of Discharge Under 11 U.S.C. §1141(a)(3)

64.     Avion incorporates by reference the foregoing paragraphs as if set forth herein *verbatim*.

65.     As set forth above, the Debtor is indebted to Avion in the amounts of $299,800 by the unpaid balance due and owing.

66.     Avion objects to the Debtor's Discharge under § 1141(a)(3) of the Bankruptcy Code which provides in relevant part:

> (3) The confirmation of a plan does not discharge a debtor if— the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

67.     If this were a case under Chapter 7, the Debtor would be denied a discharge.

68.     Accordingly, in the event the Debtor confirms its plan of reorganization, it should be denied a discharge.

## RESERVATION OF RIGHTS

69.     Avion reserves the right to amend and/or supplement this Complaint.

70.     Further investigation may reveal additional facts which support or give rise to additional grounds to challenge dischargeability of Avion's claims, or Discharge altogether.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Avion Funding, LLC respectfully requests that the Court grant the following relief:

a).    Finding that the debt owed by Debtor GFS Industries, LLC based on the Agreement be found non-dischargeable pursuant to 11 U.S.C. §523(a)(2);

b).    A denial of GFS Industries, LLC's Discharge under 11 U.S.C. § 727(a) because of its conduct pursuant to § 727(a)(3), (4), & (5); and

c).    In the event of the Confirmation of a Plan of Reorganization by the Debtor, that Avion's Claims remain non-dischargeable under a Confirmed Plan pursuant to § 1141(3).

d).    Plaintiff is granted with any and all other relief to which it may be entitled to and this Court deems appropriate.

Respectfully submitted,

**SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP**

Counsel for Avion Funding, LLC

80-02 Kew Gardens, Rd.

Ste. 600

Kew Gardens, NY, 11415

(718) 263-6800 (Telephone)

(718) 520-9401(Facsimile)

Bhirschhorn@sbagk.com

/S/ Btzalel Hirschhorn

Btzalel Hirschhorn, Esq.

NY Bar No.528925

Counsel for Avion Funding, LLC